UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| ADMIRAL INSURANCE COMPANY, | ) | Case No.:  5:12-cv-01266-LHK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING APLICATION FOR |
| v. | ) | TEMPORARY RESTRAINING ORDER |
| | ) | AND ORDER TO SHOW CAUSE WHY |
| BLUE LAKE RANCHERIA TRIBAL COURT; | ) | PRELIMINARY INJUNCTION |
| LESTER J. MARSTON, Chief Judge of the | ) | SHOULD NOT ISSUE |
| BLUE LAKE RANCHERIA INDIAN TRIBE; | ) | |
| WOOD'S ROOFING INC., a California | ) | |
| Corporation; DOES 1-10. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

On March 20, 2012, the Court issued an order, ECF No. 13, denying without prejudice Plaintiff's original application for a temporary restraining order ("TRO"). ECF No. 8 ("*Ex Parte* TRO Appl."). Before the Court is Plaintiff Admiral Insurance Company's ("Admiral") renewed application for a temporary restraining order and order to show cause why a preliminary injunction should not be issued against Defendant Blue Lake Rancheria Tribal Court ("Tribal Court"); the Honorable Lester J. Marston, Chief Judge of the Blue Lake Rancheria Tribe ("Judge Marston"); Wood's Roofing Inc. ("WRI"); and Does 1-10 (collectively "Defendants"). Admiral's Appl. for TRO and Order to Show Cause Why Prelim. Inj. Should Not Be Issued ("TRO Appl."), ECF No. 18. On March 27, 2012, the Tribal Court and Judge Marston filed a joint opposition ("Tribe Opp'n"), ECF No. 26, and WRI filed a separate opposition ("WRI Opp'n"). ECF No. 29. For the reasons set forth below, Admiral's application for a TRO and order to show cause why a preliminary injunction should not be issued is DENIED.

1

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

## I.   BACKGROUND FACTS

The following facts are alleged in Admiral's complaint, TRO application, and the declaration supporting the application.  Defendants have not contested any of the below facts.

Admiral, a Delaware Corporation, doing business in Cherry Hill, New Jersey, is an insurance company.  *Ex Parte* TRO Appl. at 5.[1]  Admiral is currently a cross-defendant in *Mainstay Business Solutions v. Wood's Roofing, Inc.*, Case No. C-09-0612-LJM, a civil action pending before the Tribal Court (the "Tribal Action").  The plaintiff in the Tribal Action is Mainstay Business Solutions ("MBS"), a division of Blue Lake Rancheria Economic Development Corporation, a federally chartered corporation pursuant to Section 17 of the Indian Reorganization Act (25 U.S.C. § 477), wholly owned by Blue Lake Rancheria, a federally recognized Indian tribe. *Id.*  The defendant in the Tribal Action is WRI, a California corporation, doing business in San Jose, California.  Compl., ECF No. 1, ¶ 9.  WRI holds a commercial general liability insurance policy with Admiral ("the insurance policy").  *Ex Parte* TRO Appl. 5.

The Tribal Action involves a contract and negligence dispute between MBS, a tribal entity, and WRI, a non-tribal building contractor.[2]  MBS and WRI entered into an agreement in 2007 ("the agreement"), wherein MBS assigned some of its employees to WRI to work at various WRI jobsites.  *Id.*  In the agreement, WRI agreed to submit to the Tribal Court's jurisdiction.  *Id.*  Three MBS employees suffered workplace injuries, and, pursuant to the agreement, MBS provided workers compensation benefits to those employees.  *Id.*  On June 23, 2011, MBS filed its complaint in Tribal Court against WRI seeking to recover, under the agreement, the benefits MBS paid to the injured WRI employees.  Compl. Ex. A.

WRI in turn sought to be defended in the Tribal Action and to be indemnified by Admiral pursuant to the insurance policy, but Admiral declined coverage on the ground that the insurance policy does not cover injured employees.  *See Ex Parte* TRO Appl. 5*; see also* Compl. ¶ 17.  As a

---

[1] The page numbers in citations to documents filed on ECF refer to the ECF stamp on the top of the page, not the original page numbers of the document.
[2] As discussed below, whether a party is Indian/Non-Indian or a member/nonmember is relevant to the jurisdictional analysis.  On this record, it appears that both WRI and Admiral are Non-Indians and nonmembers of the Blue Lake Rancheria Tribe.

2

result, WRI filed a cross-complaint against Admiral in the underlying case, seeking, among other things, the following: (1) attorney's fees and costs incurred in WRI's defense of the underlying action; (2) indemnification for the amount to be paid by WRI in settlement or satisfaction of a judgment in the underlying action; and (3) general damages.  Compl. ¶ 18; Ex. D.

On October 27, 2011, the Tribal Court ordered the parties to file cross-motions for summary judgment on the following issues: "(1) does the [Tribal] Court have personal jurisdiction over [Admiral]; (2) does the [Tribal] Court, as a matter of tribal law, have subject matter jurisdiction over [Admiral]; (3) does the [Tribal] Court, as a matter of federal law, have subject matter jurisdiction over [Admiral]; and (4) do[es] [Admiral] have an obligation to tender a defense on behalf of [WRI] in this case pursuant to policies of insurance entered into between [WRI] and [Admiral]."  *Ex Parte* TRO Appl. 7; Ex. F, at 2.  The Tribal Court ordered the parties to file their cross-motions for summary judgment by March 15, 2012, and stated that failure to comply with the order "may result in the imposition of sanctions."  *Ex Parte* TRO Appl. 7; Ex. I.  WRI timely filed its cross-motion for summary judgment with the Tribal Court; Admiral has not filed a cross-motion for summary judgment.  TRO Appl. 3.  The Tribal Court's hearing on WRI's cross-motion for summary judgment is set for April 16, 2012.  *Id.*  Although Admiral has a motion to dismiss for lack of subject matter jurisdiction pending in the Tribal Court that is not set to be heard before April 16, 2012, the Tribal Court asserts that: "If Admiral is properly served, it can object to the tribal court's jurisdiction at the hearing scheduled for April 16, 2012."  Tribal Opp'n 3.

Admiral seeks a TRO enjoining the Defendants from exercising tribal court jurisdiction over Admiral and conducting any further proceedings against Admiral.  Proposed Order, ECF No. 10-4.  Admiral argues that a TRO "is needed in order to preserve the status quo so that the jurisdictional issues can be determined first.  If this request is not granted, Admiral is forced to submit to the jurisdiction of the Tribal Court without due process or be subject to sanctions for failing to file a substantive motion on whether Admiral owes a duty to defend and indemnify WRI and have a motion for summary judgment be pending against it to which it cannot oppose, since an opposition would be viewed as subjection to the Tribal Court's jurisdiction."  *Ex Parte* TRO Appl. 10.

3

## II.    Analysis

Admiral argues that it is entitled to a TRO and preliminary injunctive relief because the Tribal Court does not have jurisdiction over WRI's cross-complaint against Admiral.  TRO Appl. 1.  Defendants counter that Admiral has failed to exhaust its tribal remedies.  WRI Opp'n 5-6; Tribe Opp'n at 2-3.  The Tribal Court and Judge Marston further argue that tribal sovereign immunity bars this action.  *Id.* at 2.

The Court agrees with Defendants that Admiral has failed to exhaust its tribal remedies. Therefore, the Court need not and does not reach: (1) the merits of Plaintiff's application for a TRO and preliminary injunction, and (2) whether the Tribal Court and Judge Marston are entitled to tribal sovereign immunity.  *See Stock West Corp. v. Taylor ("Stock West II")*, 964 F.2d 912, 919-20 (9th Cir. 1992) (en banc) (affirming district court's dismissal prior to determining merits and sovereign immunity).

### A.  Exhaustion of Tribal Remedies

"As a matter of comity . . . federal courts generally decline to entertain challenges to a tribal court's jurisdiction until the tribal court has had a full opportunity to rule on its own jurisdiction." *Elliott v. White Mountain Apache Tribal Ct.*, 566 F.3d 842, 844 (9th Cir. 2009); *see also Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16-17, 19 (1987).

"The Supreme Court has outlined four exceptions to the exhaustion rule: (1) when an assertion of tribal court jurisdiction is 'motivated by a desire to harass or is conducted in bad faith'; (2) when the tribal court action is 'patently violative of express jurisdictional prohibitions'; (3) when 'exhaustion would be futile because of the lack of an adequate opportunity to challenge the [tribal] court's jurisdiction'; and (4) when it is 'plain' that tribal court jurisdiction is lacking, so that the exhaustion requirement 'would serve no purpose other than delay.'"  *Elliott*, 566 F.3d at 847 (alteration in original) (quoting *Nevada v. Hicks*, 533 U.S. 353, 369 (2001)).  As to the fourth exception, if tribal court jurisdiction is "'colorable' or 'plausible,' then . . . exhaustion of tribal court remedies is required." *Id.* at 848 (citing *Atwood v. Fort Peck Tribal Ct. Assiniboine*, 513 F.3d 943, 948 (9th Cir. 2008)); *see also Allstate Indem. Co. v. Stump*, 191 F.3d 1071, 1075-76 (9th Cir. 1999).

4

Here, there is no evidence that the assertion of tribal court jurisdiction is motivated by a desire to harass or is conducted in bad faith.  Admiral has also not asserted that the Tribal Court's jurisdiction would be "patently violative of express jurisdictional prohibitions."  Moreover, it is not apparent at this point that exhaustion would be futile.  Although Defendant cites difficulties in obtaining a hearing date for its renewed motion to dismiss based on lack of jurisdiction, *Ex Parte* TRO Appl. 6-10, the Tribal Court has acknowledged that Admiral is challenging the Tribal Court's jurisdiction and has represented that Admiral "can object to the tribal court's jurisdiction at the hearing scheduled for April 16, 2012."  Tribal Opp'n 3.  Thus, only the fourth exception to the exhaustion rule is potentially applicable on this record.  The Court therefore limits its inquiry to whether tribal court jurisdiction is plainly lacking.

When it is "plain" that a tribal court lacks jurisdiction, "the otherwise applicable exhaustion requirement *must* give way."  *Strate v. A-1 Contractors*, 520 U.S. 438, 459 n.14 (1997) (emphasis added).  If, however, the general exhaustion rule applies, it is in this Court's discretion whether "to dismiss a case or stay the action" while a tribal court determines its own jurisdiction.  *Atwood*, 513 F.3d at 948.  As discussed below, because tribal court jurisdiction is not plainly lacking, the Court exercises its discretion and DISMISSES this case without prejudice to allow the tribal court to determine its own jurisdiction.

## B.  Tribal Court Jurisdiction Is Not Plainly Lacking

Admiral argues that the Tribal Court lacks jurisdiction over WRI's crossclaim against Admiral because Admiral is an unconsenting nonmember defendant without any connection to the Blue Lake Rancheria Tribe.  *Ex Parte* TRO Appl. 12.  Admiral further argues that "Admiral's (a non-Indian) alleged breach of duty to defend and/or indemnify WRI (another non-Indian) under an insurance policy issued off tribal lands is not a dispute over which a tribal court can have jurisdiction."  *Id.* (citing *Stock West Corp. v. Taylor ("Stock West I")*, 942 F.2d 655, 663 (9th Cir. 1991)).  Admiral contends that there are only two possible locations where the insurance dispute outlined in the cross-complaint could have arisen: (1) New Jersey, where Admiral issued the subject policy, or (2) California, where WRI is located and where the policy was entered.  *Id.* at 13.  Under either scenario, Admiral argues, the dispute arose outside of tribal lands.  Therefore,

Case No.: 5:12-cv-01266-LHK
ORDER DENYING APPLICATION FOR TRO

United States District Court
For the Northern District of California

1    Admiral contends that under federal law and the Tribe's own statutes, the Tribal Court lacks

2    jurisdiction over WRI's crossclaim against Admiral.  The Court disagrees that the issue of where

3    the dispute arose is as clear cut as Admiral suggests.

4         As an initial matter, in determining whether the exhaustion rule applies, the Court "need not

5    make a definitive determination of whether tribal court jurisdiction exists; [it] must decide only

6    whether jurisdiction is plausible."  *Elliott*, 566 F.3d at 849.  On this record, jurisdiction is plausible.

7         In considering tribal jurisdiction, the Ninth Circuit "look[s ] first to the member or

8    nonmember status of the unconsenting party."  *Philip Morris USA, Inc. v. King Mountain Tobacco,*

9    *Inc.*, 569 F.3d 932, 937 (9th Cir. 2009) (citing *Hicks*, 533 U.S. at 382 (Souter, J., concurring)).

10   "'As to nonmembers . . . a tribe's adjudicative jurisdiction does not exceed its legislative

11   jurisdiction.'"  *Id.* (quoting *Strate*, 520 U.S. at 453) (alterations in Ninth Circuit opinion).

12        The Ninth Circuit looks to two facts "when considering a tribal court's civil jurisdiction

13   over a case in which a nonmember is a party": (1) "the party status of the nonmember" -- "that is,

14   whether the nonmember party is a plaintiff or a defendant" in the tribal action; and (2) where the

15   events "giving rise to the cause of action occurred."  *See Smith v. Salish Kootenai College*, 434

16   F.3d 1127, 1131 (9th Cir. 2006) (en banc).

17        The Supreme Court has "never held that a tribal court has jurisdiction over a nonmember

18   defendant."  *Id.* (quoting *Hicks*, 533 U.S. at 358 n.2).  Indeed, in *Hicks*, the Supreme Court held

19   that the tribal court did not have jurisdiction over the nonmember defendant despite the fact that the

20   cause of action arose on tribal land within a reservation.  *See Hicks*, 533 U.S. at 374.  However,

21   despite holding that the tribal court lacked jurisdiction in the particular circumstances in *Hicks*, the

22   Supreme Court explicitly left open "'the question of tribal-court jurisdiction over nonmember

23   defendants in general.'"  *Id.* at 358 n.2 (emphasis added).  In the Ninth Circuit, "whether tribal

24   courts may exercise jurisdiction over a nonmember defendant may turn on how the claims are

25   related to tribal lands."  *Elliott*, 566 F.3d at 848 (citing *Smith*, 434 F.3d at 1132).

26        Subject to one exception not relevant here, a tribal court does not have subject matter

27   jurisdiction "beyond [a] reservation's borders."  *Water Wheel Camp Recreational Area, Inc. v.*

28   *LaRance*, 642 F.3d 802, 815 (9th Cir. 2011) (citing *Atkinson Trading Co v. Shirley*, 532 U.S. 645,

6

657 n. 12 (2001)); *see also Philip Morris*, 569 F.3d at 938; *Smith*, 434 F.3d at 1132.  As the Ninth Circuit has recognized, "[a] reservation may contain both Indian and non-Indian land . . . ."  *Water Wheel*, 642 F.3d at 809.

A tribe generally does not have jurisdiction over a nonmember defendant on non-Indian land within its reservation.  The Supreme Court has recognized two exceptions, known as the *Montana* exceptions, to this general limitation on tribal power over non-Indian land within a reservation: (1) "[a] tribe may regulate . . . the activities of non-members who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements"; and (2) "[a] tribe may also retain inherent power to exercise civil authority over . . . conduct [that] threatens or has some direct effect on the political integrity, the economic security, or the health and welfare of the tribe."  *Water Wheel*, 642 F.3d at 809 (quoting *Montana v. United States*, 450 U.S. 544, 565-66 (1981)).

By contrast, a tribe has inherent sovereign power to regulate non-Indians on tribal land. *Water Wheel*, 642 F.3d at 808-09 (citing *South Dakota v. Bourland*, 508 U.S. 679, 689 (1993)).  In the Ninth Circuit, the *Montana* exceptions do "not apply to jurisdictional questions" over claims arising on tribal land within a reservation, except "where a state has a competing interest in executing a warrant for an off-reservation crime."  *Water Wheel*, 642 F.3d at 810, 812 (citing *Hicks*, 533 U.S. at 353).  Thus, in certain situations "tribal ownership . . . may be dispositive" of a tribal court's jurisdiction."  *Elliott*, 566 F.3d at 850.

Here, despite Admiral's argument to the contrary, the record is not clear as to where exactly WRI's Tribal Court crossclaim against Admiral arose.  It is not clear whether the jobsite where the MBS employees were injured is located on Indian or Non-Indian land within the reservation.  This factual information is relevant to whether *Montana*'s exceptions apply and could even be dispositive in determining whether the Tribal Court has jurisdiction.  *Water Wheel*, 642 F.3d at 813.  Thus, "orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief."  *Stock West II*, 964 F.2d at 919.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

Moreover, *Allstate Indemnity Company v. Stump*, 191 F.3d 1071 (9th Cir. 1999), undermines Admiral's argument that the insurance claim necessarily arose in either New Jersey or California, but not the Blue Lake Rancheria reservation.  In *Allstate*, the estates of deceased members of an Indian tribe brought a claim in tribal court against Allstate for bad faith denial of insurance coverage for a fatal automobile accident that occurred on a road maintained by the tribe and located on tribal land.  Allstate challenged the tribal court's jurisdiction in federal district court, which held that the tribal court had jurisdiction.  The Ninth Circuit reversed, holding that "there is a genuine dispute over whether the estates' claim arose on the reservation, where the accident occurred and the insureds resided, or off the reservation, where the insurer was located. Because it is not plain that the tribal court lacks jurisdiction, we conclude that the insurer is required to exhaust its remedies in tribal court before challenging tribal jurisdiction in federal court . . . ."  *Id.* at 1072.  Thus, the mere fact that Admiral is located off the reservation is not sufficient to find that the claim arose off the reservation.

The *Allstate* court also held that the tribal court had personal jurisdiction over Allstate, given that the insurance policy at issue covered travel on the reservation, was sold to a resident of the reservation, and the dispute arose out of the insurance coverage.  *Id.* at 1075 (citing *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911 (9th Cir. 1990)).  Here, WRI's insurance policy with Admiral does not appear to exclude coverage for events occurring on Indian reservations, and WRI, Admiral's insured, agreed to submit to the Tribal Court's jurisdiction.  *See Ex Parte* TRO Appl. 5.  Thus, it is unclear whether the insurance policy at issue here covers activity on tribal land and whether an insured event occurred on tribal land.  These issues relevant to the Tribal Court's jurisdiction should be addressed to the Tribal Court in the first instance.

To be sure, this case is different from *Allstate* in several respects that may be material. First, unlike *Allstate*, the insurance agreement here is between two nonmembers/non-Indians and there is no evidence that Admiral mailed the policy and premium statements to a reservation address.  *Cf. Allstate*, 191 F.3d at 1072.  Second, since *Allstate*, the Supreme Court has issued two tribal court jurisdiction decisions, *Nevada v. Hicks*, 533 U.S. 353 (2001) and *Plains Commerce Bank v. Long Family Land and Cattle Co.*, 554 U.S. 316 (2008), which may alter the viability of

8

**United States District Court**
For the Northern District of California

*Allstate*'s holding.  Moreover, the Ninth Circuit has ruled on tribal jurisdiction issues several times since *Plains Commerce*.  *See, e.g.*, *Water Wheel*, 642 F.3d 802; *Philip Morris*, 569 F.3d 932; *Elliott*, 566 F.3d 842.  Although this Court has some doubts as to the Tribal Court's jurisdiction in this case,[3] assessing how these decisions apply to the facts of this case is an issue the Tribal Court must address in the first instance.  *Cf. Stock West II*, 964 F.2d at 920.

Admiral's reliance on *Stock West I* is also unavailing.  *Ex Parte* TRO Appl. 12.  Admiral cites *Stock West I* for the proposition that a breach of contract between non-Indians over an agreement entered into off tribal lands is not a dispute over which a tribal court can have jurisdiction.  *Id.* (citing *Stock West I*, 942 F.2d 655, 663 (9th Cir. 1991)).  However, this portion of *Stock West I* was reversed, en banc, by *Stock West II*, 964 F.2d at 919, which held that exhaustion was required because the record was unclear as to whether the tort claim at issue between two non-Indians arose on tribal lands.  Thus, *Stock West II*, provides further support for finding that tribal jurisdiction is not plainly lacking here.

In sum, this record "presents a colorable question" whether the Tribal Court has jurisdiction over a nonmember's indemnification and defense crossclaim against a nonmember insurer for an allegedly insured event taking place on what may have been tribal land within a reservation.  *Cf. id.*  Thus, Admiral is required to exhaust its tribal remedies before challenging the Tribal Court's jurisdiction in this Court.

### III.    CONCLUSION

For the foregoing reasons, this case is DISMISSED without prejudice for failure to exhaust tribal remedies.  Accordingly, Admiral's application is DENIED.  The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April 4, 2012

_Lucy H. Koh_____
LUCY H. KOH
United States District Judge

---

[3] The Court notes, without opining on the correctness of its reasoning or conclusions, that a sister district court recently synthesized the most recent Supreme Court and Ninth Circuit decisions on tribal jurisdiction and held that the tribal court did not have jurisdiction in an action brought by a non-Indian against a non-Indian for claims arising on the reservation.  *See Rolling Frito-Lay Sales LP v. Stover*, No. CV 11-1361-PHX-FJM, 2012 WL 252938, at * 5 (D. Ariz. Jan. 26, 2012).

9

Case No.: 5:12-cv-01266-LHK
ORDER DENYING APPLICATION FOR TRO